### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HORATIO O. GREER**, | : | **CIVIL ACTION NO. 1:07-CV-2248** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| v. | : | |
| | : | |
| **YORK COUNTY PRISON**, <u>et al.</u> | : | |
| | : | |
| **Defendants** | : | |

### MEMORANDUM

Plaintiff Horatio O. Greer, a former York County Prison inmate, commenced this civil rights action on December 12, 2007.  (Doc. 1.)  Presently pending is a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed on behalf defendant Larry L. Bortner ("Bortner").  (Doc. 22.)  For the reasons set forth below, defendant's motion will be granted.

### I.     Statement of Material Facts

In August 2007, while incarcerated at the York County Prison, plaintiff participated in the work release program, also known as the Outmate program. (Doc. 24-2, Affidavit of Larry L. Bortner ("Bortner Affidavit"), at 6, ¶ 10; Doc. 29-2, at 45.)  Defendant Bortner holds the position of  Enforcement Officer of the work release program.  (Bortner Affidavit at 4, ¶ 1.)  "Th[is] officer is responsible for maintaining a record of the inmates time in and out, supervising the cleaning of the area by prisoner workers, the handling of allowed visits to the Outmates and the Minimum Security prisoners, plus maintaining good conduct of that entire section of the Prison."  (Doc. 29-2, at 46.)  The prison regulations provide that "[a]ny

outmate found in violation of Prison rules or any law will be suspended or revoked from the Outmate program, at which time they will be housed within the secure perimeter of the prison." (Doc. 29-2, Affidavit of Clair Doll, at 5, ¶ 9; Doc. 29-2 at 46.)

On August 10, 2007, while waiting for the work release van, plaintiff entered the prison kitchen and took a packaged lunch. (Doc. 26, at 1-2.) Bortner witnessed plaintiff enter an unauthorized area of the kitchen and exit with the packaged lunch. (Doc. 24-2, Bortner Affidavit, at 6, ¶ 12.) Bortner asked plaintiff if he was allowed to take the food. (Id., at ¶ 13.) Plaintiff responded that it was his food. (Bortner Affidavit, at 6, ¶ 16.)

Following an investigation, Bortner discovered that it was not plaintiff's food. (Id. at ¶ 16.) Rather, plaintiff entered an area he was not authorized to enter, stole food, and then lied to Bortner. (Id.) A disciplinary report was issued on August 10, 2007, and plaintiff was removed from the Outmate program pending a hearing with the deputy warden. (Doc. 29-2, at 16; Doc. 24-2, Bortner Affidavit, at 6, ¶ 17). Plaintiff's "Individual Admission Record," confirms that he was "Mpved [sic] to general population, due to ODR, stealing food from kitchen, lying to staff, presence in an unauthorized area, will have a hearing next week, with D/W Thomas . . . ." (Doc. 29-2, at 11.) On August 15, 2007, he was reclassified "to ED-2B, Lt Max Sec.," based on his removal from the Outmate program. (Doc. 29-2, at 11; Doc. 24-2 , Bortner Affidavit, at 6, ¶ 18.)

On August 16, 2007, a hearing was held by Deputy Warden Thomas. Greer was found guilty "by his own statements," removed from the Outmate program and

reclassified to general population. (Doc. 29-2, at 11, 18.) He was advised that he

could reapply for work release at the expiration of thirty days so long as he was

misconduct free. (Id. at 17.)

Plaintiff alleges that Bortner removed him from the Outmate program in

retaliation for a civil action filed in federal court against York County. (Doc. 1.)

Bortner states that the only knowledge he possessed about the lawsuit was that

Greer was required to pay $30.00 per month. (Doc. 24-2, Bortner Affidavit, at 4,

¶¶ 7, 8, 22.) At one point, Greer asked him to reduce the monthly payment to $20.00,

but he informed Greer that he had no such authority. (Id. at ¶ 8.) This discussion

occurred "perhaps as many as two months before" issuance of the disciplinary

report that resulted in removal form the Outmate program. (Id. at ¶ 6.) Bortner

maintains that plaintiff's "removal from the outmate program was based solely on

the conviction for stealing food. It had nothing to do with Greer's lawsuit against

the County." (Doc. 24-2, at 6, Bortner Affidavit, at 8, ¶ 21.)

## II.     **Standard of Review**

Through summary adjudication the court may dispose of those claims that do

not present a "genuine issue as to any material fact" and for which a jury trial

would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). The

burden of proof is upon the non-moving party to come forth with "affirmative

evidence, beyond the allegations of the pleadings," in support of its right to relief.

Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P.

56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence

must be adequate, as a matter of law, to sustain a judgment in favor of the

non-moving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

587-89 (1986); see also FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the

cause of action proceed.  Pappas, 331 F. Supp. 2d at 315.

## III.   Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a

cause of action for violations of federal law by state officials.  See 42 U.S.C. § 1983.

The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress. . . .

Id.

### A.     Retaliation

The First Amendment offers protection for a wide variety of expressive

activities.  See U.S. Const. amend I.  These rights are lessened, but not extinguished

in the prison context, where legitimate penological interests must be considered in

assessing the constitutionality of official conduct.  See Turner v. Safley, 482 U.S. 78,

89 (1987).  Retaliation for expressive activities can infringe upon an individual's

rights under the First Amendment.  See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d

Cir. 2000).  To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must

demonstrate (1) that he was engaged in protected activity; (2) that he suffered an

"adverse action" by government officials; and (3) that there is "a causal link

between the exercise of his constitutional rights and the adverse action taken

against him."   Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001) (quoting Allah, 229 F.3d

at 225).

   With respect to the first prong, the filing of a lawsuit is protected conduct

that clearly falls within the ambit of the First Amendment.  See Mitchell v. Horn,

318 F.3d 523, 530 (3d Cir. 2003); see also Allah, 229 F.3d at 224 (noting that it is well

settled that "prisoners have a constitutional right to access to the courts").  The

First Amendment is implicated in cases in which prisoners allege that they have

suffered adverse actions in retaliation for filing lawsuits.  Peterkin v. Jeffes, 855 F.2d

1021, 1036 (3d Cir. 1988); Cook v. Boyd, 881 F. Supp. 171, 176, n. 4 (E.D.Pa. 1995).

Plaintiff states that "he was retaliated against for filing a lawsuit against the county

. . ." (Doc. 1, at 6), which satisfies the protected conduct element.

   Next, the prisoner must show that he has suffered some adverse action at the

hands of prison officials.  See Rauser, 241 F.3d at 333 (citing Allah v. Sieverling, 229

F.3d 220, 225 (3d Cir. 2000)).  A prisoner can satisfy this prong by demonstrating

that the action was sufficient to deter a person of ordinary firmness from exercising

his constitutional rights.  See id.  The adverse action of which Greer complains is

the issuance of a false misconduct that resulted in removal from the work release or

Outmate program.  Allegations of being falsely charged with misconduct based on

retaliatory motives generally satisfies the requirement that an inmate establish

whether the actions purportedly taken in retaliation for this conduct are sufficiently "adverse" to constitute constitutionally cognizable infringements.  See Smith, 293 F.3d at 653 (finding that falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment).

The last Rauser prong requires a prisoner to establish a causal link between the exercise of his constitutional rights and the adverse action taken against him. The court employs a burden-shifting regime to determine whether a causal link exists.  The prisoner bears the initial burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him or retaliate against him.  See id. (citing Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  The burden then shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same disciplinary action even in the absence of the protected activity.  See id.  If the defendants prove that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest, they will prevail in the retaliation action.  See id. at 334.

Defendant takes the position that the same actions would have been taken regardless of plaintiff's pursuit of a lawsuit against the county.  Although Bortner was aware that Greer had a federal lawsuit pending, his knowledge was limited to Greer's concerns about a monthly payment that was withdrawn from his work release account and submitted to federal court.  However, these discussions occurred "perhaps as many as two months before" Greer was issued a disciplinary

6

report.  (Doc. 24-2, Bortner Affidavit, at 5, ¶ 6.)  According to the record, Bortner's

decision to write-up Greer for "stealing the food was based solely on [his]

observation of [Greer's] actions and [his] investigation that confirmed he had eaten

lunch and that he did not have the right to take this food."  (Id. at 8, ¶ 23.)  The

evidence supports the conclusion that his removal from the Outmate program was

directly related to the issuance of a disciplinary report based on violations of prison

rules.  There is no question that there is a legitimate penological interest in

punishing inmates who violate prison rules and, deprivation of institutional

privileges is certainly an acceptable manner in which to accomplish this end.

Moreover, plaintiff has failed to come forward with any affirmative showing, beyond

the allegations of the pleadings, in support of his retaliation claim.  As such, the

court will grant summary judgment on the retaliation claim.

###    B.    Due Process

In his opposition brief, Greer argues that removal from the work release

program violated his due process rights.  (Doc. 26, at 3.)  Prisoners have no

Fourteenth Amendment liberty or property interest in prison employment,

participation in a work release program, or a particular prison wage.  See Callender

v. Sioux City Residential Treatment Facility, 88 F.3d 666, 668 (8th Cir. 1996)

(prisoner has no liberty interest in remaining in a work-release program); Coakley,

884 F.2d at 1221 (no property interest in continuing in work-release program under

Fourteenth Amendment); McGoue v. Janecka, 211 F. Supp.2d 627, 630-31 (E.D.Pa.

2002) (same).  Therefore, Plaintiff's argument that his removal from work release

was a violation of his due process rights is without merit.

## IV.    <u>Conclusion</u>

In accordance with the foregoing, defendant's motion for summary judgment

(Doc. 22) will be granted in its entirety.


<u>  S/ Christopher C. Conner  </u>
CHRISTOPHER C. CONNER
United States District Judge


Dated:       February 27, 2009

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HORATIO O. GREER,** | : | **CIVIL ACTION NO. 1:07-CV-2248** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **YORK COUNTY PRISON**, <u>et al.</u> | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 27th day of February, 2009, in accordance with the foregoing

memorandum, it is hereby ORDERED that:

1.  Defendant's motion for summary judgment (Doc. 22) pursuant to Federal Rule of Civil Procedure 56 is GRANTED in its entirety.

2.  The Clerk of Court is directed to ENTER judgment in favor of defendant and against plaintiff.

3.  The Clerk of Court is further directed to CLOSE this case.

4.  Any appeal from this order is DEEMED frivolous and not in good faith. <u>See</u> 28 U.S.C. § 1915(a)(3).


    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge